Looks like we're all here. We'll turn now to 24-4114, Dressen v. AstraZeneca AB. Mr. Anderson, are you ready to proceed? I am, Your Honor. Good morning, and may it please the Court. I'm going to try to reserve three minutes of my time. In a declared national emergency like the COVID pandemic, federal immunity for vaccine manufacturers depends on two things. One, does the plaintiff assert a loss covered by the statute? And two, was that loss allegedly caused by the administration of a vaccine? The complaint answers both questions for us. Ms. Dressen says in paragraph 27 that she suffered, quote, a COVID vaccine injury. In paragraphs 168, 169, and 174, she seeks to recover her medical expenses and emotional damages. That's her loss that she says she, quote, incurred as a result of the vaccine. That's the causation. The PREP Act directly addresses this scenario. It gives manufacturers immunity from suit and liability under federal and state law for all claims for loss, which Congress broadly defined to include the physical, mental, and emotional injuries that Ms. Dressen claims here. Any time that loss has a causal relationship to the administration of a vaccine, the plain text bars this suit. The decision below should be reversed because nothing in the statute carves out contract claims. Why did your client bother entering into these contracts in the first place if you're going to, you know, fail to honor them and claim immunity? I don't quite get it. Is that because the PREP immunity came later? So, your honor, this is AstraZeneca's global standard informed consent form. It's attached to the complaint. And you see that this is a required element of clinical vaccine trials all over the world. And in this case, the PREP Act immunity, Congress just overlaid the conditions for enforcement of any kind of claim. So, all claims for loss. But every single promise that was made in the informed consent form was made subject to the PREP Act. That's the choice that Congress made. And Ms. Dressen was directly informed expressly that the PREP Act may limit her ability to sue or recover. And this was not some fine print on page 62 of the appendix here. There were three paragraphs that spelled out the limitations that federal law imposes under the conditions of a national emergency right here. And so, the analytical error below is, you know, when Congress said all claims for loss, they used that phrase because they meant all claims, right? So, we need to have a loss in causation. And under those circumstances, Congress was agnostic to the legal theory that was applied. Well, is her argument that the PREP Act compensation does not fully compensate her for the vaccine injury? Is that the underlying controversy between your client and her? I think the underlying controversy here is, again, a statutory question of whether contract claims are categorically excluded. I'm talking about what the damages theory is. Correct. And so, the damages, we understand that Ms. Dressen has sought compensation from the exclusive remedial regime that Congress created, the CICP. And that the losses that she sought from the federal compensation program are the exact same losses that she seeks here. And she's entitled to seek compensation through the federal program. But what she can't do, because the statute forbids it, is pursue duplicative state claims for what she calls, what she attributes to the COVID vaccine, right? That's precisely the sort of claim that the PREP Act immunizes. Now, could your form, are you saying that the protection provided to AstraZeneca by the act cannot be waived? Could it be waived in a form? Now, presumably, a clear and unmistakable waiver of immunity. I don't think there's reason that it couldn't be. We certainly don't have that here. We have the opposite. That has not been litigated, right? Correct, Your Honor. So, we could decide that this is a claim that is covered by the act and remand to the district court to see whether there's been a waiver. Could we not? Correct, Your Honor. That was an alternative theory that was raised below. It's an alternative theory. I would respectfully submit that the clear and unmistakable standard for waiver can't be met in a circumstance where the immunity itself was clearly disclosed on the same page of that informed consent form. But yes, Your Honor, that could be decided below. So, we don't need to decide whether the form overrides the act. We don't need to decide that at this stage of the proceedings. No, Your Honor. The question just is whether the damages she's seeking are covered by the PREP Act absent a waiver. Is that right? Correct. Whether the statute carves out contract claims. And that is the question on interlocutory appeal here. Mr. Anderson, I do have a question about that. Are you finished answering Judge Hartz? I do have a question about the collateral order doctrine applied here. Our cases are pretty stringent on the application of that. In particular, when you're looking at litigation between two private parties, we almost never agree that those types of disputes, even with an underlying immunity, can be interlocutory appeal. What do you think makes this one special? It's Congress's choice of the scope of immunity here. It's immunity from suit and liability. That's the statutory text. And so, as every court of appeals to address this question has agreed, that is subject to interlocutory appeal from a motion, from a denial of a motion to dismiss. So, the Sixth Circuit in Goins, the Eighth Circuit as well, recognizes that that meets the Cohen or Mohawk standards for an interlocutory appeal for immunity here. And they're applying familiar doctrines of sovereign immunity, tribal immunity, qualified immunity that make this an appealable final order because the immunity from suit would be forever lost if this case proceeds beyond a motion to dismiss. Well, it'd be lost in this case, but the issue could be resolved on a direct appeal. I don't necessarily disagree with you. I've been on the losing end of these collateral order in the Tenth Circuit. So, I have a lot of sympathy for that. But having been on the losing end, we've found no collateral order for litigation privilege, for Bivens Actions, False Claims Act. You've cited cases in your brief, so we've gone kind of both ways. But I think you've answered my question. It's basically Congress has given you a broad immunity and you deserve to have that decided. That's right, Your Honor. And so, turning back to the merits, because the question on appeal, again, to Judge Hartz is this narrow question of whether the statute carves out contract claims categorically. And we know it doesn't. In fact, Congress knew how to create an exception for contract claims. It wrote one in the PLCAA, that's the firearms statute, just two months earlier. And it omitted contract claims from the sale or purchase of a product. But it omitted that carve out in the PREP Act. And that omission was deliberate, because legislators were forced to make the difficult policy choice that in an emergency, the national interest is best served by the rapid development and deployment of life-saving vaccines without the looming threat of litigation. It was balancing the private rights with public safety. But as was alluded to earlier, Congress did not leave participants without a remedy. It centralized that recovery in the CICP. And so, again, Ms. Dressen has sought those claims here. And I want to focus on what I believe to be the key analytical error made in the decision below, because the district court found an exception for contract claims in the causation element. And respectfully, I believe the court misapplied that causation element. The district court asked whether the breach of contract was caused by the administration of a vaccine, rather than asking whether the loss was causally related to the administration of a vaccine, which is what the statutory text requires. So the district court just asked the wrong question and therefore reached the wrong result. Congress was focused on losses, not labels. And if a covered loss is causally related to the administration of the vaccine, then all claims, all claims are immunized under the statute. And as this court recognized in Allen, all means all, as the Supreme Court recognized in Norfolk and Western Railway, an exemption from all other law, which was the statutory language in that case, includes contract claims. There are no implicit exceptions in Congress. And that breadth is a feature of this law. It's not a flaw. While the uniform rule may seem broad, it's the very breadth that allows the life-saving countermeasures to exist at all. Did we lose you? No, I'm still here. I welcome the court's questions. I'm happy to restore the remainder of my time. You didn't move and I thought maybe there was a transmission problem. May I ask a brief question? If we do reverse, do we need to go in your prayer on page 37, you include a number of things. You alluded to some that fit the PREP Act's definition or illustrations of what constitutes a loss, emotional injury, medical injury and the like. But there are some species of recovery like lost income. If we do reverse, do we need to go item by item in your prayer and determine which of the specific requests for relief in the complaint are or not proper losses that would fall within the immunity under the PREP Act or do we just start that? Your Honor, I don't think that level of parsing is necessary. And in fact, that would encourage artful pleading. I think what Congress was focused on is the nature of the loss writ large, not how many different kinds of loss can be articulated. And lost income, for instance, could be captured by the business interruption definition of loss, which of course Congress defined as all kinds of loss. And it included some specific examples. So I don't think that level of parsing is necessary. And what it boils down to respectfully is that absent the injection, no claim exists at all in this case. And so that's again, that was Congress's focus here, looking at the loss, determine whether it meets a relaxed causation standard between the administration of the vaccine and that is this case and therefore immunity applies. Thank you. There are no further questions I'd like to reserve the remainder of my time. Thank you, counsel. Thank you. Mr. Conant. May it please the court. My name is Michael Conant and I am an attorney for the United States Congress. A license to break its promises. And more fundamentally, a license to lie. That the immunity under the PrEP Act is so radically broad that it can lie to clinical trial participants like Ms. Dressen without incurring any civil liability. AstraZeneca's position is that it can induce prospective trial participants like Ms. Dressen to take an experimental drug by unequivocally promising that if they get injured, AstraZeneca will cover their costs. And when trusting members of the public act on this promise and get injured, AstraZeneca can simply turn around and say, sorry, we don't owe you a single solitary cent. Now, how is that argument different from your waiver argument? Is it essentially the same as the waiver argument? Because apparently if there weren't this form, you would say that but because of the form, they're not protected, which sounds like a waiver argument to me. Your Honor, that's a good question. I think ultimately it's two pathways to get to the same result. Either the PrEP Act, as we argued, does not include and does not cover contractual violations at all. Or if it does, then AstraZeneca waived that right by knowingly, it knowingly is extinguishing a right that it had by making the promise to pay Ms. Dressen's costs if she gets injured. So I think it's two pathways to the same end. But let me explore your argument for the primary pathway you seem to be taking, which is that the PrEP Act, as I understand it, your argument rests in large part on the list of things that of losses that are not covered under the PrEP Act that there's immunity for, and you have death, physical, mental, romantic, emotional injury, and so on. And you say these are tort losses and that supports the position that contract losses are not covered. Am I getting that close to right? That is part of it, your Honor. It's one piece of the puzzle. We look to the words of the statute to understand what all claims means. And when looking to the words of statute, we see that it is laced with tort-based language, both in terms of tort-based mental states, willfulness, recklessness, negligence, tort-based damages like death, physical injury, emotional injury, as well as tort-based conduct. If you look at A2B, when we're talking about the scope of immunity, the statute provides a classic laundry list of type of conduct that you see in product liability tort cases. So, our argument is, first, look, you understand what a word means by the company it keeps, noceteer associates. And in this statute, it is laced with tort-based language. But that's not all, your Honor. You look to, because clearly the statute does not speak to contracts one way or the other. You either have to read in contracts or read out. Our position is the far more reasonable construction is to read contracts out. And one of the ways you get there is you look to the history of the act. You look to the purpose underlying the act. And as we note in our papers, the history here is you had a tidal wave of tort claims and tort liability against pharmaceutical companies for vaccines. Congress was very sensitive to that. They wanted to ensure that vaccine companies did not have crippling tort litigation. And so, they implemented the PrEP Act to address tort liability. But there was never any such thing as contract liability for pharmaceutical companies with respect to vaccines. There's not a single solitary mention in the congressional record about needing to protect vaccine companies from contracts. So, we would argue, your Honor, that the words of the statute, this tort-based framework, aligns with the history that gave rise to the act, as well as Congress's purpose in enacting the act. And- Let me- I didn't mean to interrupt you. I thought you had concluded, but- I would just add one other point. And one other way you get to this result, your Honor, is, which I think is a very important piece here, is the absurdity doctrine. I think it is unthinkable that Congress could have intended for pharmaceutical companies, like AstraZeneca, to be able to lie through their teeth to clinical trial participants, promise them that they will cover their costs if they get injured, and then turn around and say, nope, we don't have to pay you because Congress gave us a license to lie. It's absurd and bizarre to think that Congress would have done that. Well, doesn't the informed consent form have a disclaimer about potential congressional PrEP immunity? Why doesn't that put your client on fair notice that there might be an immunity problem down the road? I don't think it does, your Honor, for several reasons. First off, the contract is very clear, unequivocally so, that AstraZeneca will pay the costs of a research injury. That language is unequivocal. By contrast, several paragraphs later, there is language that doesn't mention the PrEP Act, never discloses that there is a PrEP Act or how to find it. It talks about a federal order or a federal rule. More importantly, your Honor, it never says there's a federal statute that prevents you from ever recovering costs from us unless we commit willful misconduct. Instead, it speaks in very ambiguous and equivocal terms as there is a federal order that may limit your right to sue. It doesn't say will limit, it doesn't take the position that AstraZeneca takes here that there's complete immunity and they don't have to pay a cent. It doesn't speak to that. But they're saying may because this is a global consent form and sometimes the vaccines or whatever drug they're administering is covered by the PrEP Act and sometimes it's not. Isn't that what the mayors referring to? There may be a statute that limits liability. I don't think that's, I don't think you can consider that because I think that if you look at parole evidence rule, we need to look to the four corners of the page, whether or not, and there's no evidence in the record to indicate that AstraZeneca, why they drafted the contract that way and whether they have the same language in other countries. I think you need to look at the contract as written between a sophisticated party like AstraZeneca and an unsophisticated trial participant and ask what does the plain meaning of that we will pay your costs. And then later it says there may be a federal statute that may limit your right to sue. How does an ordinary lay person interpret that? They look at it and they see a clear promise, a clear promise to get their costs recovered if they should get injured. And the other stuff is kind of, what does it mean? I don't know. I mean, what does that even mean? I think we get your point there. Let me ask you though, what were you seeking to recover in your lawsuit? We are seeking your honor to cover the full extent of damages that can be recovered under the law of contracts, both general damages. Well, I want to know specifically because I gather from what opposing counsel recited a few minutes ago from the complaint, you want to pay for her medical expenses and recovery, emotional losses and so on, things that are listed as losses under the PREP Act. So why does that language, if what you're seeking through a contract claim are losses that are specifically listed in the PREP Act, how can you say that the fact that that language is used in the PREP Act shows it's limited to tort claims and not contract claims? So I'll start by saying that we are, the damages that we seek in this case do happen to be partially coextensive with the damages that you see in tort cases. And what's the difference? What you said partially coextensive. Can you name something that wouldn't be covered in the tort claim? Yes, your honor. I think that you'll see a difference in what you can recover for emotional damages in a contract action. There are more limitations on what you can recover as well as different hurdles that you have to overcome to recover emotional damages under controlling Utah PREP, which we have briefed below. And also there's limitations on things like punitive damages. How can you have a breach of contract here without a vaccine injury? Your honor, you can't. And the reason you can't is that AstraZeneca drafted this contract. And when they drafted this contract, they made the condition precedent of their obligation to pay a vaccine injury. So our claim follows the terms of their contract. Their contract says if the costs. So our claim seeks to recover the general damages of the breach. The general damages of the breach follows the promise. But the condition precedent isn't satisfied without the vaccine causing a vaccine injury. Correct. But this goes to the... Right. So there's no breach if there's no contract injury. There's no breach without a vaccine injury. Correct, your honor. And our position, our argument is that, I mean, when we look to the scope of immunity under a statute, we look to its purpose. The purpose of the PREP Act, as the both parties agree, is to promote the rapid development of countermeasures, including vaccines. A critical component of that are clinical trials. And clinical trials require public participation, which requires public trust. And if you allow pharmaceutical companies to lie, to straight up lie to trial participants by saying, we're going to cover your costs if you get injured, and then turn around and say, sorry, we don't have to pay you or we're not going to pay you, that will erode, perhaps irreparably so, the trust that is essential to public participation in clinical trials. You go ahead. Touch back, right? No, let's move on. I think we understand the point being made. So go ahead. Touch back, right? My question to you, Mr. Conant, is I understand that none of us had a role in writing the PREP Act. The first thing that you said, I want to push back on that, that we start with the purpose. I don't think that's true. We start with the words of the statute. And I think that, and you can tell me if I misunderstood your last answer to Judge Timcovich's question, but at least in paragraph 37 of the complaint, you have included medical expenses, emotional injury, illustrations, as Judge Hart's mentioned, that are examples explicitly of losses that are enumerated in the PREP Act. So then the question is, does the loss arise out of the use of a vaccine that you argued in response to Judge Timcovich that, well, it's not a cause, it's a condition precedent. But to follow up on Judge Timcovich's question, isn't that answer fatal to your whole argument based on the terminology of the statute? You have a loss, at least for some of the species of recovery that you put in paragraph 37 in the prayer, and you cannot have a loss without that condition precedent. That's what a condition precedent. Why isn't that combination a very simple paragraph to reverse based on the argument we have a loss and we have a condition precedent that arises out of the use of a vaccine? I'll start by saying I agree that you don't need to look to congressional purpose or legislative history if you have a statute that's clear on its face and plain on its face. But literalism does not equal good textualism. And so I think AstraZeneca's position is, well, the word all means all, and you can ignore the context in which this word is placed in the statute, as well as the congressional purpose. Our position is, is that there's ambiguity in this statute. It definitely does not ever mention contracts. So the court has to read contracts in or has to read contracts out. And so when you have some ambiguity, it's really critical that you look to the purpose and then ask yourself which construction of this statute is going to best further congressional purpose. Is it the construction that will allow pharmaceutical companies to lie through their teeth? The clinical trial? I think you've made that point very well several times and your time has expired. Judge Becker, I may have some more questions, but I think you don't need to go any further on that point. I do have a follow-up question. I'm just looking at the PrEP Act and going back to the statute. And we've been talking most about Part A, which is the definition of a mostly tort-like damages, but Part B is scope. And in the scope paragraph, it says the immunity applies to any claim of loss that arises out of clinical trials. And so it looks like Congress was envisioning harms or losses coming out of clinical trials. How would you square that with your argument? I think that's clear. I think Congress absolutely envisioned things like people getting injured by a vaccine during a clinical trial. And Congress did not want those people to sue the company for that injury. But the legal injury there, Your Honor, is the injury itself. Here, the legal injury is not the vaccine injury. The legal injury here is that AstraZeneca breached its contractual obligation. That is the legal injury for which we seek relief. I do not think, Your Honor, that Congress ever once contemplated the scenario that is here where a company seeks to escape its contractual promise. And so that would be my response. Lastly, I would note that as the court noted earlier, even if the court were to construe the PREP Act as encompassing contractual violations, this case is not ripe for dismissal because we have two separate pathways for overcoming that through both waiver and estoppel. And as AstraZeneca has conceded in its brief, these are issues that do require factual development. One is a pure issue of fact, or mostly an issue of fact, and the other is a mixed question of law. So I would... Yeah, that's understood. That's not a dispute. Did you have another question, Judge Bacharach? Oh, no. Okay. Because I have a follow-up question. It wasn't that long ago during my life as a lawyer that there was a lot of controversy or difference of opinion regarding malpractice cases and to what extent it was a contractual claim or a tort claim. If you got a bad result from surgery, was that breach of contract or was that tort? Things like that. Are you saying that if a state decides to recast its more recent cases that have generally treated these issues as tort claims and called them contract claims, that then the suits under those contract claims would not be covered by the PROTECT Act, that it's just a matter of nomenclature? I don't think so, Your Honor. And we sort of addressed this down below where AstraZeneca was trying to characterize this case as a breach of warranty kind of case that you see within, or an implied warranty case that you see within product liability, which are sometimes called contract actions. At the end of the day, those actions have their fundamental roots in tort. And so you can't just... This is not just a matter of semantics. You can't just... You're saying breach of warranty is really fundamentally based on tort law? Is that what you're saying? Yes, in the product liability context. Well, why can't we say your contract claim is fundamentally based on tort law? How do you decide whether it's fundamentally based on tort law or not? Well, Utah law provides guidance on just that issue. Is there a written promise, the breach of which gives you a cause of action? And so in here, that's what we have. We have a written instrument with a promise that was broken. And that is a very distinct cause of action from implying some type of warranty that then becomes termed a contract. I think that type of cause of action, you can't escape the PREP Act through that kind of semantics. But where you have a company that is expressly promising something in an enforceable written contract, that is a distinct cause of action. And I think it's important to note that this is not something that has caused any issues with litigation in the past. This is not something that's going to open the floodgates of litigation. This is entirely within the control of pharmaceutical companies like AstraZeneca to simply not make promises if they're not prepared to keep them. Then there's no further liability. Okay. I think in terms of exhaustion, I think we've exhausted your arguments at this point. Mr. Anderson has reserved some time, so we'll hear from him. Thank you. Thank you, Your Honors. I want to address three points in rebuttal. First is the comment that the statutory text does not include an express invocation of contracts either way. It also doesn't include an express inclusion of statutory claims, but those are immune as we saw in the red case. It also doesn't say federal constitutional claims are included, but as the Ninth Circuit found in Manny, they are. All claims means all claims. Congress was not interested in legal labels. It wanted to see if there was a loss as broadly defined by the statute. And if so, and it was caused by the administration of a vaccine, all claims that could be brought for that kind of loss are immunized. The second is the idea of the unequivocal promise. First of all, I want to read from what the informed consent form says. But before I do that, nothing in an informed consent form can change the statutory meaning of the PREP Act. That is an independent question, as Judge Hartz has reminded us a few times. But here's what the contract says. You may be prevented from making claims for injuries that have a causal relationship with the use of the investigational product in this study. And it goes on to say, including but not limited to claims for death. And it essentially replicates the text of the PREP Act without naming it by name. What page of the consent form was that? Did you read from? I'm reading from page 62 of the appendix. That may be the easiest way to find it, Your Honor. Lastly, the absurdity canon. All means all and interpreting it that way is not absurd. This was a deliberate, if difficult, policy choice by Congress. Reading the text faithfully is not just good textualism. It shows respect for Congress's constitutional role in setting national emergency policy. It recognizes that Congress used broad language throughout. Any claim, all claims. Loss means any loss. Using a causation standard that is as broad as we get in legislative text, arising out of, relating to, caused by. It faithfully honors the careful balance that Congress struck. It was faced with a national emergency in 2005, recognizing that our industries were not equipped and were deterred from being able to prepare our country for the rapid development and deployment of life-saving vaccines in the event of a crisis. Honoring the balance that they struck, broad as it may be, directing injuries that are caused thereby to the federal compensation scheme is not absurd. Respectfully, this is a heartland case for immunity. The factual predicate of this case, in Ms. Dressen's own words, are the personal neurological harm from the vaccine. That is precisely the circumstance that the text and purpose of Congress sought to immunize. We respectfully ask this court to reverse the judgment below. Thank you, counsel. Thank you both. Cases submitted. No more questions, I gather. I should have checked. Okay. No. Cases submitted and counsel are excused. Thank you.